**David HARRIS, Plaintiff,**

v.

**Alvin D. MOYER, James M. Cole, Robert E. Walker, Brian R. Perryman, Frances Falkowski, and Thomas Farris, individually and in their official capacities with the Department of Justice, Immigration and Naturalization Service, and the United States Department of Justice, Immigration and Naturalization Service, Defendants.**

No. 85 C 2228.

United States District Court, N.D. Illinois, E.D.

Oct. 23, 1985.

Douglas P. Roller, Chicago, Ill., for plaintiff.

Jack Penca, U.S. Asst. Atty., Chicago, Ill., for defendants.

MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff David Harris was discharged from a probationary appointment with the Immigration and Naturalization Service (INS) under somewhat unusual circumstances which he claims violated his constitutional and common law rights. Defendants have moved to dismiss the complaint on the grounds that the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq.*, provides plaintiff with a comprehensive scheme of remedies and therefore that this court has no subject matter jurisdiction. Because the court disagrees with how defendants characterize the CSRA, it denies their motion to dismiss.

I.

On November 14, 1982, the INS hired Harris to train him to be a criminal investigator. He was placed on probationary status for a year, as are all trainees. According to his complaint, which the court must accept as true for present purposes, Harris

received average or above average scores on all his evaluations. On October 12, 1983, Harris received his Conduct and Efficiency Report prepared by his training officer, Mr. Rockwell, which recommended the INS retain Harris because he had the ability to do an outstanding job. However, on November 5, 1983, defendant Moyer, District Director of the INS in charge of making final appointments, discharged Harris on the grounds that he had (1) poor judgment relating to a citizen complaint; (2) overly authoritarian demeanor; (3) difficulty in mastering Spanish; and (4) unsatisfactory ability to express himself in writing.

Plaintiff claims that these reasons were pretextual and made in an attempt to save a senator from embarrassment. The senator's nephew was in the same training program as Harris and had difficulty with several phases of the training program. Plaintiff asserts that by October 1983 it was common knowledge in the training program that the nephew had failed the final examination and would be terminated. Plaintiff also claims that the senator personally called defendant Moyer to discuss his nephew's future. Feeling pressured from the senator, Moyer decided to fire at least one other criminal investigator along with the nephew, figuring this would keep the senator from feeling that his nephew had been singled out. Plaintiff claims this was the real reason behind his being fired.

Plaintiff appealed his dismissal to the Merit System Protection Board, which found that the agency's explanation of his termination · was "unworthy of credence and pretextual." The INS has appealed this finding to the United States Court of Appeals for the Federal Circuit, arguing that the Board was without jurisdiction to hear plaintiff's claims because he was a probationary employee.[1]

In the meantime, plaintiff has filed this lawsuit in federal district court. In count I he claims defendant deprived him of his liberty and property interest in his reputation and job for partisan political reasons, in violation of the Fifth Amendment; in count II he asks for punitive damages on count I violations; in count III he claims defamation; and in count IV he claims breach of his employment contract.

## II.

 In their motion to dismiss defendants make one argument: that the provisions of the CSRA protecting government employees against arbitrary actions by their superiors create a comprehensive scheme of remedies which precludes judicial remedies.[2] In *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court held that a federal employee did not have a judicial remedy for a First Amendment claim because

> [f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed. They apply to a multitude of personnel decisions that are made daily by federal agencies.

462 U.S. at 385, 103 S.Ct. at 2415. However, the Court noted that probationary

---

1. This court's knowledge of the plaintiff's statutory action before the U.S. Court of Appeals for the Federal Circuit is limited to what the plaintiff describes in his brief. We are told that he brought his appeal before the Merit Board pursuant to 5 C.F.R. § 315.806, which confines Board review to allegations that he was discharged for "partisan political reasons or marital status," or that the agency followed improper procedures in his discharge. It is unclear how, from these grounds, the Board could have reached the conclusion that plaintiff's termination was "unworthy of credence and pretextual." This decision seems more consistent with 5 C.F.R. § 315.804, which has been held to give probationary employees the substantive right to have honest reasons for their removal made in

good faith. *See Shaw v. United States,* 622 F.2d 520, 527 (Ct.Cl.), *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105 (1980).

Whatever the basis for the Board's decision, and plaintiff's claims under the CSRA, the plaintiff's case here clearly involves rights based on the Constitution and is properly before this court.

2. Because the whole of defendants' motion to dismiss goes to plaintiff's constitutional claims contained in count I of his complaint, the court will treat the motion as one to dismiss count I and not attempt to divine arguments that have yet to be made regarding counts II and III.

employees are not "covered by this system." *Id.* at 385 n. 28, 103 S.Ct. at 2415 n. 28.

The Court has provided for remedies against federal officials directly under the Constitution, when no other relief is available. *See Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). In *Carlson,* the Court stated that

> [s]uch a cause of action may be defeated ... in two situations. The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." [*Bivens v. Six Unknown Fed. Narcotics Agents* ] 403 U.S. at 396 [91 S.Ct. at 2004]; *Davis v. Passman,* 442 U.S. 228, 245 [99 S.Ct. 2264, 2277, 60 L.Ed.2d 846] (1979). The second is when defendants show that Congress had provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective. *Bivens, supra,* at 397 [91 S.Ct. at 2005]; *Davis v. Passman, supra,* at 245–247 [99 S.Ct. at 2277–2278].

446 U.S. at 18–19, 100 S.Ct. at 1471–1472. While some language in *Bush* indicates the Court rested on the fact that Congress had created an equally effective remedial scheme in the CSRA, other passages suggest the Court grounded its decision on the presence of "special factors counseling hesitation," particularly the historical attention Congress had paid to the problem of balancing federal employees' First Amendment rights with the government's interest in an efficient operation.

Whatever the basis of the *Bush* decision, the court finds it does not control the present case. As a probationary employee plaintiff had extremely limited rights to administrative review which did not even cover his constitutional denial of due process claims. He had no statutory right to appeal to the Merit System Protection Board, 5 U.S.C. §§ 7511 and 7512. At most, he had a limited right conferred by regulation to appeal to the Board respecting allegations that his discharge was due to discrimination on the basis of marital status or for partisan political reasons. 5 C.F.R. § 315.806. *See Mastriano v. Federal Aviation Administration,* 714 F.2d 1152, 1155 (Fed.Cir.1983); *Piskadlo v. Veterans' Administration, Merit Systems Protection Board,* 668 F.2d 82 (1st Cir. 1982).[3]

Under these circumstances courts have granted federal jurisdiction over probationary employees' constitutional claims. *Egger v. Phillips,* 710 F.2d 292 (7th Cir.), *cert. denied* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *Borrell v. United States International Communications Agency,* 682 F.2d 981 (D.C.Cir.1982); *Gemmell v. Federal Aviation Administration,* 558 F.Supp. 918 (D.D.C.1982). As the court recognized in *Gemmell,* "[i]f this Court refuses to hear plaintiffs' constitutional claims there will be no forum available to them." 558 F.Supp. at 920. This "here or nowhere" reality was a strong motivating factor behind the original *Bivens* decision to allow private rights of action against federal officials based on the Constitution. *Bivens,* 403 U.S. at 410, 91 S.Ct. at 2011 (Harlan, J., concurring).

The Seventh Circuit, in *Egger,* discussed the two *Carlson* exceptions to a *Bivens*

---

**3.** The CSRA also gives probationary employees the right to petition the Office of Special Counsel of the Merit System Protection Board to investigate and seek correction of prohibited personnel practices, 5 U.S.C. § 1206(a)(1), but the employee is not a party to this investigation and the CSRA gives them no right to appeal an OSC decision not to prosecute. As the court stated in *Borrell v. United States International Communications Agency,* 682 F.2d 981, 990 (D.C.Cir.1982):

We would, furthermore, be hard pressed to deny jurisdiction over a constitutional claim when the only alternative statutory remedy allows no right of individual participation by the injured employee and permits no judicial review of the merits of the agency official's decision not to investigate or prosecute the employee's claim.

action in the context of the discharge of an FBI employee. The court considered the fact that Congress had not provided an alternative statutory remedy, "a factor in favor of recognizing *Bivens* claims."[4] 710 F.2d at 297. Appellees argued there as defendants do here that Congress' explicit exemption of a certain group from statutory protections was its statement that this group should not be given federal remedies. The court rejected this contention, stating that

> [t]he exemption, however, is a far cry from the *"explicit* congressional declaration" that would be necessary to preclude a group from their only avenue for vindicating particular deprivations of their constitutional rights.

710 F.2d at 298. Harris' situation under the CRSA is sufficiently similar to that which the Seventh Circuit found in *Egger* for us to hold that case controls the present action.[5]

### III.

It is well, however, to emphasize that the issue presented by this motion focuses only on whether the CSRA forecloses a probationary employee from any *Bivens* relief, regardless of the circumstances. The government's sweeping assertion that it does, might have been made with more hesitation or not made at all, if, for example, the INS had erroneously declared a probationary employee to be a murderer; had terminated the employee for that reason; and had so proclaimed to the world by postings in public places.

A probationary employee has limited and fragile protectable interests in his employment and the manner of its termination, as the courts have noted in a variety of contexts, *see Piskadlo v. Veterans' Administration, Merit Systems Protection Board,* 668 F.2d 82, 84 (1st Cir.1982); *Shaw v. United States,* 622 F.2d 520, 527 (Ct.Cl.), *cert. denied* 449 U.S. 881, 101 S.Ct. 410, 66 L.Ed.2d 252 (1980); *Borrell v. U.S. International Communications Agency,* 682 F.2d 981 (D.C.Cir.1982); *Bartholomew v. United States,* 740 F.2d 526 (7th Cir.1984); and *Perry v. Federal Bureau of Investigation,* 769 F.2d 450 (7th Cir.1985). But that does not mean that any liberty and, possibly, property interests he may have are foreclosed by the CRSA. What those interests might be and whether plaintiff has properly claimed their violation we leave to another day.

For the reasons stated, the motion to dismiss is denied.

---

**4.** The court also recognized the converse of this proposition: that the existence of statutory protections is "a special factor *precluding* recognition of a Bivens action," 710 F.2d at 298 (emphasis added), which is exactly what the Supreme Court said in *Bush.*

**5.** Defendants cite *Francisco v. Schmidt,* 575 F.Supp. 1200 (E.D.Wisc.1983), where the court found that a *Bivens* action was not available to a probationary employee under the CSRA. The court reasoned that the Supreme Court in *Bush* found that the "fact that the case involved the relations between the Government and its employees was determined to be ... a special factor," counseling hesitation. 575 F.Supp. at 1202. The court finds that this reasoning paints *Bush* with too broad a brush, and that the reasoning in *Egger* is much more persuasive, as well as being controlling in this circuit. If plaintiff should prevail in the Federal Circuit, the views expressed here respecting the impact of CSRA on this action will, of course, have to be reconsidered.